UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                             Case No. 22-cr-233

KENNETH TWYMAN,

          Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, and Porchia S. Lewand, Assistant United States Attorney, and the defendant, Kenneth Twyman, individually and by attorney Mark Richards, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in all counts of a four-count indictment, which alleges violations of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D); and Title 18, United States Code, Sections 924(c)(1)(A)(i), 922(n), 924(a)(1)(D), 922(a)(6), and 924(a)(2).

3. The defendant has also been charged in all counts of a four-count information, which alleges violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and 841(b)(1)(D); and Title 18, United States Code, Sections 922(o), 922(a)(6), and 924(a)(2),

4. The defendant has read and fully understands the charges contained in the indictment and information. He fully understands the nature and elements of the crimes with

which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

5. The defendant voluntarily agrees to waive prosecution by indictment in open court.

6. The defendant voluntarily agrees to plead guilty to the following counts set forth in full as follows:

## COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

1. On or about September 11, 2018, in the State and Eastern District of Wisconsin,

**KENNETH TWYMAN**

knowingly and intentionally possessed with intent to distribute controlled substances.

2. The offense involved a mixture and substance containing cocaine base in the form of "crack" cocaine, a Schedule II controlled substance; a mixture and substance containing marijuana, a Schedule I controlled substance; and a mixture and substance containing heroin, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 841(b)(1)(D).

2

## COUNT TWO

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

Between on or about August 14, 2018, and on or about September 11, 2018, in the State and Eastern District of Wisconsin and elsewhere,

**KENNETH TWYMAN**

did knowingly possess a machinegun, namely a fully automatic Glock, model 22, .40 caliber pistol bearing serial number HUL496, with a machinegun conversion device attached.

In violation of Title 18, United States Code, Sections 922(o) and 924(a)(2).

## COUNT THREE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

On or about January 4, 2022, in the State and Eastern District of Wisconsin,

**KENNETH TWYMAN**

knowingly and intentionally possessed with intent to distribute a mixture and substance containing marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D).

## COUNT FOUR

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. On or about March 5, 2022, in the State and Eastern District of Wisconsin,

**KENNETH TWYMAN,**

in connection with the acquisition of a firearm from Fleet Farm, a federally licensed firearms dealer in Germantown, Wisconsin, knowingly made a false and fictious written statement intended and likely to deceive Fleet Farm as to a fact material to the lawfulness of the sale and disposition of such firearm under the provisions of Chapter 44 of Title 18, United States Code.

2. Specifically, in connection with the attempted purchase of a Glock 26 Gen 5, 9 x 19 caliber semi-automatic pistol, bearing serial number AGBM573, the defendant falsely stated on the Firearms Transactions Record (ATF Form 4473) that he was not under information in any court for a felony offense when, in fact, he was under a felony information in Milwaukee County case numbers 18-CF-5295 and 22-CF-83, and in Waukesha County case number 21-CF-1155.

All in violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

7. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in paragraph six. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt. This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in these offenses.

## PENALTIES

8. The parties understand and agree that the offenses to which the defendant will enter a plea of guilty carry the following maximum terms of imprisonment, fines, and penalties:

4

- Count One, 20 years, $1 million, and at least three years of supervised release;
- Count Two, 10 years, $250,000, and up to three years supervised release;
- Count Three, 5 years, $250,000, at least two years of supervised release; and
- Count Four, 10 years, $250,00, and up to three years of supervised release.
- Each count also carries a mandatory special assessment of $100.

9. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF INDICTMENT

10. The government agrees to move to dismiss the indictment at the time of sentencing.

## ELEMENTS

11. The parties understand and agree that in order to sustain the charge of possession with intent to distribute controlled substances as set forth in Count One of the Information, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant knowingly possessed marijuana, heroin, and cocaine base;
> Second, the defendant intended to distribute the substance to another person; and
> Third, the defendant knew the substance was some kind of controlled substance. The government is not required to prove that the defendant knew the substance was marijuana, heroin, or cocaine base.

The parties further understand and agree that in order to sustain the charge of possession of a machine gun as set forth in Count Two of the Information, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant knowingly possessed a "machine gun[1];" and

---

[1] **Definition of "machine gun":** The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun,

5

Second, the defendant knew, or was aware of, the essential characteristics of the firearm which made it a "machine gun" as defined by Section 921(a).

The parties further understand and agree that in order to sustain the charge of possession with intent to distribute a controlled substance as set forth in Count Three of the Information, the government must prove each of the following propositions beyond a reasonable doubt:

First, the defendant knowingly possessed marijuana;
Second, the defendant intended to distribute the substance to another person; and
Third, the defendant knew the substance was some kind of controlled substance. The government is not required to prove that the defendant knew the substance was marijuana.

The parties further understand and agree that in order to sustain the charge of making a false statement to a licensed firearms dealer as set forth in Count Four of the Information, the government must prove each of the following propositions beyond a reasonable doubt:

First, the defendant made a false statement in connection with the acquisition of a firearm from a licensed firearms dealer;
Second, the defendant did so knowingly; and
Third, the statement was intended to or likely to deceive the dealer with respect to any fact material to the lawfulness of the sale or other disposition of the firearm.

## SENTENCING PROVISIONS

12. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

---

and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person. 18 U.S.C. § 921(a)(23) and 26 U.S.C. § 5845(b).

6

13. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

14. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offenses set forth in paragraph 6. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

15. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

16. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

17. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating

7

the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant is pleading guilty.

18. The parties acknowledge and understand that the government will recommend to the sentencing court that the relevant conduct attributable to the defendant is at least 2.3 kilograms of converted drug weight.

### Base Offense Level

19. The parties acknowledge and understand that the government will recommend to the sentencing court that the applicable base offense level for the offenses charged in Counts One and Three is 14 under Sentencing Guidelines Manual § 2D1.1(a)(5) & 2D1.1(c)(13). The parties further understand and agree that the government will recommend to the sentencing court that the applicable base offense level for the offense charged in Count Two is 18 under Sentencing Guidelines Manual § 2K2.1(a)(5) and the applicable base offense level for the offense charged in Count Four is 12 under Sentencing Guidelines Manual §2K2.1(a)(7).

### Specific Offense Characteristics

20. The parties acknowledge and understand that the government will recommend to the sentencing court that a 2-level increase for possession of a dangerous weapon under Sentencing Guidelines Manual § 2D1.1(b)(1) is applicable to the offense level for the offense charged in Count Three.

### Reckless Endangerment During Flight

21. The parties acknowledge and understand that the government will recommend to the sentencing court that a 2-level increase under Sentencing Guidelines Manual § 3C1.2 is applicable to the offense level for the offenses charged in Counts One and Two for reckless endangerment during flight.

8

### Acceptance of Responsibility

22. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

### Sentencing Recommendations

23. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

24. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

25. The government agrees to recommend a sentence of 10 years' imprisonment. The government further agrees to recommend that the sentence run concurrently to any other sentence.

### Court's Determinations at Sentencing

26. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United

9

States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 8 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

27. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

**FINANCIAL MATTERS**

28. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

29. The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLP during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form..

### Fine

30. The parties agree to recommend that no fine be imposed.

### Special Assessment

31. The defendant agrees to pay the special assessment in the amount of $400 prior to or at the time of sentencing.

### Forfeiture

32. The defendant agrees that all properties listed in the indictment and information constitute the proceeds of the offenses to which he is pleading guilty or were used to facilitate such offenses. The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in each of the listed properties. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement.

### DEFENDANT'S WAIVER OF RIGHTS

33. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

      c.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

      d.     At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

      e.     At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

34. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

35. The defendant acknowledges and understands that he will be adjudicated guilty of the offenses to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

36. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the

entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

37. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his conviction or sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statutes or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

38. The defendant knowingly and voluntarily waives any claim or objection he may have based on statute of limitations or venue.

### **Further Civil or Administrative Action**

39. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against

13

the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

40. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

41. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

42. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

43. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

44. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the

14

government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

45. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 9/15/23

KENNETH TWYMAN
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 9-20-23

MARK RICHARDS
Attorney for Defendant

For the United States of America:

Date: 9/28/2023

for GREGORY J. HAANSTAD
United States Attorney

Date: 9/28/23

PORCHIA S. LEWAND
Assistant United States Attorney

16

Case 2:22-cr-00233-JPS   Filed 09/28/23   Page 16 of 20   Document 4

<u>United States v. Kenneth Twyman</u>, 22-CR-233

**Attachment A**

**September 11, 2018: Counts One and Two of the Information**

On September 11, 2018, deputies with the Milwaukee County Sheriff's Office were on routine patrol when they observed a silver Infiniti with aftermarket tinting on the windows and noted that the license plates did not match the vehicle. Deputies attempted to conduct a traffic stop of the vehicle, but the vehicle led deputies on a high-speed pursuit. The Infiniti fled at speeds exceeding 65 MPH in a 35 MPH zone, disregarding multiple stop signs, and the pursuit ultimately ended when the Infiniti struck another motorist.

The driver of the vehicle then fled on foot and was observed to be a young, black male, with dreadlocks. Deputies engaged in a brief foot pursuit and jumped over a fence. The foot pursuit ended when one deputy alerted that there was a passenger in the vehicle who was being detained at gunpoint.

Deputies then went back and walked the flight path of the foot pursuit and recovered a clear, plastic baggy containing a white chalk-like, rocky substance, which field-tested positive for 4 grams of cocaine sitting directly next to the crashed, silver Infiniti. Approximately 25 feet into the flight path, deputies recovered a small bag of a brown substance which later field tested positive for 1.1 grams of heroin.

A search of the vehicle revealed a large quantity of marijuana in the front passenger compartment. Within the large bag were two smaller bags of marijuana. One of those bags contained nine individually wrapped smaller bags of marijuana. The large bag weighed 209 grams; the bag with the nine individual bags weighed 40 grams (packaged in 4.4 gram quantities). The second small bag contained 3 grams.

Officers also recovered a handgun on the passenger floorboard next to the marijuana. Finally, from between the vehicle's front passenger seat and front passenger door, officers recovered a firearm magazine containing 22 rounds of ammunition.

While on scene, deputies were approached by a witness who reported that she had observed the Infiniti operating at a high rate of speed and driving recklessly. She stated that the Infiniti pulled up next to her vehicle, and the driver let down his vehicle and "mean mugged" her. She stated that she recognized the driver as someone whom she used to work with. She stated that she did not know his name but knew him as "RoRo." She stated that there were a total of three occupants in the Infiniti at that time. She further stated that she lives nearby and heard the sirens and then saw the crashed Infiniti and recognized it as the same one that she had just seen RoRo driving approximately 10 minutes prior. She subsequently identified the defendant, Kenneth Twyman, in a photo array as the person whom she had seen driving the Infiniti before it crashed.

The vehicle was towed from the scene. Two phones were recovered in the vehicle. An iPhone had a picture on the screensaver of Twyman holding up a large quantity of cash. Within

1

the center console, officers recovered a large quantity of plastic bags overflowing out of the compartment. Underneath the plastic bags was another firearm magazine with 15 rounds inside. Also located in the vehicle was a digital scale and a flip phone. Another box of ammunition containing 50 (of 100) rounds was located in the glovebox along with a towing receipt in the name of Kenneth Twyman. At the time, Twyman had an active probation warrant for a marijuana possession case.

**Phone Extractions**

- 414-639-5792
    - Contained multiple messages referring to the selling and buying of marijuana, cocaine-based drugs, and firearms
        - Ex. 8/31/2018
            - Received: "okay you got loud"
            - Sent: "Yeah"
        - Ex. 8/24/2018
            - Received: "Cuz you go have zip later"
            - Sent: "Yeah nigga im da weed man this my job"
        - Ex. 8/22/2018
            - Received: "YOU NEVER HIT ME WITH THAT 3.5 EITHER FROM WHITE BOY" ("white boy" is slang for cocaine)
        - Ex. 6/8/18
            - Received: "Bro I got to go to work early G u still got the banger" ("banger" is slang for a firearm)
- 414-303-1009
    - Also contained evidence of drug trafficking
        - Ex. 6/18/18
            - Received: "Up to u cuz imma bring the 340 n yo two zips n jus go to greedy n get 200 4 200 this nigga accounts froze like dead ass bank with nigga now"
            - Received: "Let me kno wen u gone swing by to bringweed fo da ten"
            - Sent: "Iight im waiting for my plug"
- 414-393-8286 (iPhone)
    - text messages with street level drug transactions
    - videos of marijuana "3.5-$15"
    - videos of him with large sums of money and large quantities of marijuana (photos of the same)
    - photo of marijuana on a scale reading a measurement of 209 grams
    - snapchat video of him making crack cocaine
    - **8/4/18 video shows Twyman holding an automatic handgun while driving in a vehicle then roll down the window and begin shooting the automatic weapon outside his vehicle towards a residence. You can also see a high-capacity magazine in his lap.**

2

- Other Gun Videos
    - Video created 7/17/18
        - ☐ Twyman holding a short-barreled rifle or Drako with a quad rail and a scope on the firearm with what appeared to be a 30-round magazine inserted, with Twyman wearing body armor
        - ☐ Another video from the same day shows Twyman recording himself while holding two Glock firearms

The Glock recovered from the vehicle on September 11, 2018 was test-fired for NIBIN leads. At that time, officers learned that the **Glock functioned as a fully automatic firearm.** The gun was also sent to the Wisconsin State Crime Lab which also confirmed that the firearm was fully automatic.

The recovered drugs were confirmed by the crime lab to contain heroin, cocaine, and THC, and the quantities obtained, along with the other indicia, reflect that the drugs were possessed with the intent to distribute

**January 4, 2022, arrest by USMS: Count Three of the Information**

The USMS arrested Twyman for the second time on January 4, 2022. He was located at an apartment in Milwaukee. When officers approached apartment #4, they encountered two women. USMS announced their presence and began to clear the apartment. They located Twyman in a back bedroom, laying in the bed, covered by a bed sheet.

Once Twyman was arrested, he asked for a pair of pants from the bedroom where he was arrested. Upon re-entering the room to retrieve clothing for Twyman, officers observed two large, clear, plastic bags containing suspected marijuana in plain view. Officers also observed a large sum of U.S. currency and two cellular phones. The two phones were located between the mattress and box spring near the headboard of the bed.

Officers then spoke with DT, who stated that she resides in the apartment and pays all the bills there without the assistance of anyone. She was informed about the marijuana and gave written and verbal consent to search the residence.

During the search of the residence, four separate quantities of marijuana were recovered from the bedroom where Twyman was located. The total weight was approximately 2.1 pounds (964.8 grams). Officers also recovered from within a different bedroom a loaded Glock, model 19, 9mm pistol bearing serial number ADMT150. A check of the pistol revealed that it had been previously stolen from a law enforcement officer on October 30, 2021. A total of $9,525.00 was also recovered from various locations inside of the apartment.

Officers also recovered a third phone from a vehicle: a Ford Edge that was registered to DT; the keys for the Ford Edge were recovered in a jacket belonging to Kenneth Twyman.

3

The recovered firearm was submitted to the Wisconsin State Crime Laboratory and Twyman's DNA was on the trigger.

**March 5, 2022, attempted firearm purchase: Count Four of the Information**

On March 5, 2022, while Twyman was still a fugitive, he attempted to purchase a Glock 26Gen5 pistol bearing serial number AGBM573 from Fleet Farm in Germantown, Wisconsin. On the form, where asked in question 21(b) whether he was under indictment or information in any court for a felony, Twyman answered, "no." The firearms transaction was denied after the background check revealed that Twyman was under felony information in Milwaukee case numbers 18CF5295 and 22CF83, and Waukesha County Case number 21CF1155.